**PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; Planned Parenthood Center of El Paso; Stewart R. Mott; Stephen L. Isaacs; Sosamma Lindsay, on behalf of herself and others similarly situated; and Jane Doe, on behalf of herself and others similarly situated, Plaintiffs–Appellants,**

v.

**AGENCY FOR INTERNATIONAL DEVELOPMENT and M. Peter McPherson, as Administrator of the Agency for International Development, Defendants–Appellees.**

No. 1524, Docket 90–7274.

United States Court of Appeals, Second Circuit.

Argued June 7, 1990.

Decided Sept. 19, 1990.

**60**

Roger K. Evans, New York City (Eve W. Paul, Dara Klassel, Planned Parenthood Federation of America, New York City, Walter B. Slocombe, Albert G. Lauber, Jr., Caplin & Drysdale, Chartered, Washington, D.C., and Harriet F. Pilpel, New York City, of counsel), for plaintiffs-appellants.

Stacey J. Moritz, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty. for S.D.N.Y. and Edward T. Ferguson, III, Asst. U.S. Atty., New York City, of counsel), for defendants-appellees.

James F. Fitzpatrick, New York City (Margaret T. Burns and Gwyn F. Murray, Arnold & Porter, Washington, D.C., of counsel), filed a brief for amici curiae Ass'n for Voluntary Surgical Contraception, Family Health Intern., Alan Guttmacher Institute, Intern. Projects Assistance Services, Intern. Women's Health Coalition, Pathfinder Fund, Population Council and Population Crisis Committee.

Norman Siegel, New York City (Arthur Eisenberg and Catherine Weiss, New York Civ. Liberties Union, New York City, of counsel), Rachael Pine, New York City (Ellen K. Goetz, American Civ. Liberties Union, New York City, of counsel), filed a brief for amici curiae American Civ. Liberties Union, New York Civ. Liberties Union, Fund for Free Expression, Professional Rights Committee of American Soc. of Journalists and Authors, Inc. and P.E.N. American Center.

Before VAN GRAAFEILAND, MINER and ALTIMARI, Circuit Judges.

MINER, Circuit Judge:

Plaintiffs-appellants Planned Parenthood Federation of America, Inc. ("Planned Parenthood"), Planned Parenthood Center of El Paso, Stewart R. Mott, Stephen L. Isaacs, Sosamma Lindsay and Jane Doe appeal from a judgment entered in the United States District Court for the Southern District of New York (Walker, *C.J.*, sitting by designation) dismissing the complaint in this action for failure to state a claim upon which relief may be granted. *See Planned Parenthood Fed'n of Am., Inc. v. Agency for Int'l Dev.*, No. 87 Civ. 0248 (JMW) (S.D.N.Y. Mar. 7, 1990) (1990 WL 26306; 1990 U.S. Dist. LEXIS 2430). Plaintiffs-appellants contend that the implementation of an executive branch policy by the Agency for International Development ("AID") restricting federal assistance to foreign nongovernmental family planning organizations violates their constitutional rights to speech, association and privacy. The district court, considering the claims on remand from our decision in *Planned Parenthood Fed'n of Am., Inc. v.*

*Agency for Int'l Dev.*, 838 F.2d 649 (2d Cir.1988) (*Planned Parenthood I*), upheld AID's conditions on funding for foreign nongovernmental organizations as the least restrictive means of implementing a non-justiciable foreign policy decision. For the reasons that follow, we affirm.

## BACKGROUND

Familiarity with our decision in *Planned Parenthood I* is presumed, and we restate only those facts relevant to this appeal.

The Foreign Assistance Act of 1961, 22 U.S.C. §§ 2151–2429a (1988), authorizes the President "to furnish assistance, on such terms and conditions as he may determine, for voluntary population planning." 22 U.S.C. § 2151b(b). The President's policy concerning such assistance was announced in an August 1984 statement at a United Nations conference on population planning in Mexico City. The statement provides in pertinent part:

[T]he United States does not consider abortion an acceptable element of family planning programs and will no longer contribute to those of which it is a part. Accordingly, when dealing with nations which support abortion with funds not provided by the United States Government, the United States will contribute to such nations through segregated accounts which cannot be used for abortion. Moreover, the United States will no longer contribute to separate nongovernmental organizations which perform or actively promote abortion as a method of family planning in other nations.

Policy Statement of the United States of America at the United Nations International Conference on Population (Second Session) Mexico, D.F., August 6–13, 1984, at 4–5 (hereafter the "Mexico City Statement"). Thus, the United States policy is to continue to fund foreign governments through segregated accounts that may not be used for abortion-related activity, even if the foreign government engages in such activity with its own funds, but to "withhold federal assistance from foreign nongovernmental organizations ("NGOs") that perform or actively promote abortions,

even if those activities are financed with non-federal funds." *Planned Parenthood I*, 838 F.2d at 651.

Administration of the voluntary population planning program has been delegated by the President to the Director of the United States International Development and Cooperation Agency, Exec. Order No. 12,163, 44 Fed.Reg. 56,673 (1979), who has further delegated that authority to the Administrator of the Agency for International Development, IDCA Delegation No. 1, 44 Fed.Reg. 57,521 (1979), *as amended*, 45 Fed.Reg. 74,090 (1980). *See Planned Parenthood I*, 838 F.2d at 651. AID disburses federal family planning assistance through cooperative agreements with domestic NGOs such as Planned Parenthood. Planned Parenthood and other domestic NGOs, in turn, subgrant AID funds to foreign NGOs for family planning projects in foreign countries.

In response to the Mexico City Statement, AID drafted a "Standard Provision to be Used in Grants and Cooperative Agreements with U.S. Nongovernmental Organizations" (the "Standard Clause") containing eligibility provisions for family planning grants and cooperative agreements. Every foreign NGO receiving assistance for family planning from AID must "certif[y] in writing that it does not perform or actively promote abortion as a method of family planning in AID-recipient countries and does not provide financial support to any other foreign nongovernmental organization that conducts such activities." Standard Clause ¶ (d)(3)(i). The phrase "actively promote abortion" is defined in the Standard Clause to include "providing advice and information regarding the benefits and availability of abortion," "encouraging women to consider abortion," and "[l]obbying a foreign government to legalize or make available abortion." *Id.* ¶ (d)(10)(iii). These restrictions on abortion-related activities apply to the entire organization, not just to the project or division of the foreign NGO receiving AID funds. *Id.* ¶ (d)(11).

AID has informed Planned Parenthood that, upon expiration of a temporary agree-

ment on October 31, 1990, it will not renew the former cooperative agreement unless Planned Parenthood agrees to enforce the Standard Clause when subgranting funds to foreign NGOs. However, no restriction is placed on the use of non-AID funds by Planned Parenthood in the United States or abroad; Planned Parenthood remains free to expend its own funds for abortion-related activities while participating as a conduit for AID funds to foreign NGOs. *See id.* ¶ (c). A foreign NGO also may employ or collaborate with other individuals and organizations on all family planning projects except abortion-related activities while, at the same time, its employees and collaborators independently engage in abortion-related activities, provided that the NGO does not endorse or provide financial support for the action and takes reasonable steps to ensure that the employee or collaborator does not improperly represent that they are acting on behalf of the NGO. *Id.* ¶ (d)(10)(iii)(C).

Plaintiffs-appellants allege that the Standard Clause violates their constitutional rights to speech, association and privacy.[1] Planned Parenthood contends that the Standard Clause imposes unconstitutional conditions on an important government benefit by requiring it to enforce restrictions on speech in order to participate as a conduit for AID funds to foreign NGOs. Together with plaintiffs-appellants Planned Parenthood Center of El Paso, Stewart R. Mott and Stephen L. Isaacs, Planned Parenthood also contends that the Standard Clause interferes with free speech and association by providing a financial incentive for foreign NGOs to abstain from participating with them in abortion-related activities.

Plaintiff-appellant Sosamma Lindsay, an American citizen and Dean of a nursing college in Kenya, sues individually and as representative of a class of American citizens employed by foreign NGOs subject to the terms and conditions of the Standard Clause. She contends that the foreign

university for which she works would be required by the Standard Clause to prevent her from teaching a curriculum relating to the availability and benefits of abortion and that her first amendment right to speak out on family planning issues would be restricted accordingly.

Plaintiff-appellant Jane Doe, an American citizen who lives in Nigeria, sues individually and as representative of a class of women who rely for family planning advice on foreign NGOs subject to the terms and conditions of the Standard Clause. She contends that the Standard Clause prevents her and others similarly situated from receiving "full and accurate medical information and advice about family planning and abortion" from foreign NGOs that receive funding from AID.

The district court initially dismissed the constitutional challenges to the Standard Clause as nonjusticiable because they were "targeted not merely at a method or means of implementation of a foreign policy, but at the foreign policy itself." *Planned Parenthood,* 670 F.Supp. at 547. In *Planned Parenthood I,* we agreed that the policy itself was not justiciable, but we reversed and directed the district court to consider on remand " 'the legality of AID's implementation of the [Statement].' " 838 F.2d at 656 (quoting *DKT Memorial Fund, Ltd. v. Agency for Int'l Dev.,* 810 F.2d 1236, 1238 (D.C.Cir.1987)).

Complying with that directive, the district court examined the Standard Clause, determined that AID has chosen the least restrictive means to implement an otherwise unreviewable policy, and dismissed the complaint. *Planned Parenthood,* 1990 WL 26306 at *7, 1990 U.S. Dist. LEXIS 2430 at *20. The district court applied the deferential standard of review described in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), because it found that any impact on plaintiffs' speech was incidental to the restrictions on foreign NGOs mandated by the foreign policy iden-

---

1. Plaintiffs-appellants also alleged that the Standard Clause was adopted in violation of AID's statutory authority. The district court dismissed the statutory claims, *Planned Parenthood*

*Fed'n of Am., Inc. v. Agency for Int'l Dev.,* 670 F.Supp. 538, 542–45 (S.D.N.Y.1987), and we affirmed the dismissal of those claims in *Planned Parenthood I,* 838 F.2d at 654–55.

tified in the first appeal. The court held that AID's implementing mechanism, the Standard Clause, (1) was "within the statutory and constitutional power of the government"; (2) "advance[d] a substantial governmental foreign policy interest"; and (3) that the "incidental intrusion on the rights of domestic NGOs is 'no greater than is essential to the furtherance of the [government's] interest.'" *Planned Parenthood,* 1990 WL 26306 at *8, 1990 U.S. Dist. LEXIS 2430 at *24 (quoting *O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679). The court found that the direct, viewpoint-based restrictions on foreign NGOs did not preclude application of the *O'Brien* test because "[t]he government may, as a matter of its foreign policy choices, discriminate on the basis of its political views in deciding which foreign governments and NGOs will further United States interests and one vehicle it may employ in doing so is its power to grant foreign assistance." *Id.,* 1990 WL 26306 at *6, 1990 U.S. Dist. LEXIS 2430 at *18. The court also dismissed Doe's privacy claim, finding that the Standard Clause was not an "'affirmative legal obstacle to abortion services'" and that its "'practical effect ... on the availability of abortion services is constitutionally irrelevant.'" *Id.,* 1990 WL 26306 at *8, 1990 U.S. Dist. LEXIS 2430 at *25 (quoting *New York v. Sullivan,* 889 F.2d 401, 411 (2d Cir.1989), *cert. granted,* ⎯ U.S. ⎯, 110 S.Ct. 2559, 109 L.Ed.2d 742 (1990)).

## DISCUSSION

The government's "decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny." *Regan v. Taxation With Representation,* 461 U.S. 540, 549, 103 S.Ct. 1997, 2003, 76 L.Ed.2d 129 (1983). The government may deny food stamps to a household because one of its members is participating in a labor strike, *Lyng v. International Union, United Auto. Workers,* 485 U.S. 360, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988); it may deny tax-exempt status to an organization because it engages in lobbying, *Taxation With Representation,* 461 U.S. 540, 103 S.Ct. 1997; it may provide public funding

to some candidates for public office and deny such funding to others, *Buckley v. Valeo,* 424 U.S. 1, 90–107, 96 S.Ct. 612, 668–77, 46 L.Ed.2d 659 (1976) (per curiam); and it may deny tax deductions for amounts expended for the promotion or defeat of legislation and initiative measures, *Cammarano v. United States,* 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959). The Supreme Court has also held that the government may decide to fund only medical expenses incident to childbirth and not any expenses related to abortion. *Harris v. McRae,* 448 U.S. 297, 315, 100 S.Ct. 2671, 2687, 65 L.Ed.2d 784 (1980); *Maher v. Roe,* 432 U.S. 464, 474, 97 S.Ct. 2376, 2382, 53 L.Ed.2d 484 (1977). A policy of not subsidizing the exercise of a fundamental right differs in an important respect from a prohibition on the exercise of a fundamental right, *see, e.g., Boos v. Barry,* 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988), or from the imposition of an unconstitutional condition on the exercise of a fundamental right, *see, e.g., Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), because the mere refusal to subsidize a fundamental right "places no governmental obstacle in the path" of a plaintiff seeking to exercise that right, *McRae,* 448 U.S. at 315, 100 S.Ct. at 2687; *see also Taxation With Representation,* 461 U.S. at 549–50, 103 S.Ct. at 2002–03; *Buckley,* 424 U.S. at 94–95, 96 S.Ct. at 670–71.

Plaintiffs-appellants contend that the Standard Clause places obstacles in the path of their exercise of first amendment rights and therefore must be subjected to strict scrutiny. They allege that it is impractical for United States citizens or organizations to engage in abortion-related activities abroad without the cooperation of foreign organizations and that the Standard Clause deters "many of the most logical and effective foreign partners." By conditioning AID funding of foreign NGOs on complete disassociation with abortion-related activities, they contend AID "picks off or buys up" foreign NGOs that otherwise would participate with plaintiffs-appellants in abortion-related activities. *See DKT Memorial Fund Ltd. v. AID,* 887 F.2d 275, 300 (D.C.Cir.1989) (Ginsburg, R., J., dissenting). However, unlike statutes

imposing criminal penalties for those who burn the American flag, see *United States v. Eichman*, —— U.S. ——, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990), or prohibiting the display of certain signs in front of embassies, see *Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988), the Standard Clause does not prohibit plaintiffs-appellants from exercising their first amendment rights. Plaintiffs-appellants may use their own funds to pursue whatever abortion-related activities they wish in foreign countries. Indeed, the Standard Clause permits Planned Parenthood to grant AID funds to a foreign NGO for all aspects of family planning except abortion and to use its own funds to establish an abortion-related facility next door. The harm alleged in the complaint is the result of choices made by foreign NGOs to take AID's money rather than engage in non-AID funded cooperative efforts with plaintiffs-appellants.

Such an incidental effect from the refusal to subsidize the exercise of a constitutional right obviously is not what the Supreme Court considers an "obstacle in the path" of plaintiffs seeking to exercise the right. The Court upheld the refusal to subsidize striking workers with food stamps in *Lyng v. International Union*, even though "[d]enying such benefits makes it harder for strikers to maintain themselves and their families during the strike and exerts pressure on them to abandon their union." 485 U.S. at 368, 108 S.Ct. at 1190. In *McRae*, the Court upheld the government's refusal to subsidize abortion-related medical expenses, despite its finding that the policy "of unequal subsidization of abortion and other medical services [ ] encourages alternative activity deemed in the public interest." 448 U.S. at 315, 100 S.Ct. at 2687; see also *Maher*, 432 U.S. at 474, 97 S.Ct. at 2383 (recognizing that refusal to subsidize abortion-related expenses "may make it difficult—and in some cases, perhaps, impossible—for some women to have abortions"). The effect of the Standard Clause on plaintiffs-appellants simply is not comparable to the prohibitions on speech in *Boos* and *Eichman*, the prior restraint of the Pentagon Papers in *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (per curiam), or the censorship by means of intimidation and threats of criminal prosecution in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64, 83 S.Ct. 631, 636, 9 L.Ed.2d 584 (1963). Plaintiffs-appellants' reliance on these cases is therefore without merit.

Planned Parenthood's assertion that the Standard Clause imposes an unconstitutional condition on the receipt of an important government benefit, see, e.g., *Sindermann*, 408 U.S. at 597, 92 S.Ct. at 2697, must fail for similar reasons. In *Sindermann*, the plaintiff was forced to choose between his employment and his right to freedom of speech. See *id.* at 598, 92 S.Ct. at 2698. No such choice is imposed upon Planned Parenthood here. Planned Parenthood may continue to participate as a conduit for AID funds that are restricted to non-abortion activities while maintaining with its own funds abortion-related activities in the same countries. Similarly, the Standard Clause does not prevent Planned Parenthood Center of El Paso, Stewart R. Mott, Stephen L. Isaacs, or the class represented by Sosamma Lindsay from pursuing abortion-related activities abroad with non-AID funds.

The voluntary population planning program at issue in this case provides a government subsidy for foreign family planning programs. The President, acting pursuant to his authority under the Foreign Assistance Act, has determined that the government will not subsidize "separate nongovernmental organizations which perform or actively promote abortion as a method of family planning in other nations." Mexico City Statement at 5. As we held in *Planned Parenthood I*, 838 F.2d at 655, the wisdom of, and motivation behind, this policy are not justiciable issues. See also *Buckley*, 424 U.S. at 91, 96 S.Ct. at 669; *DKT Memorial Fund*, 810 F.2d at 1238. Were the courts to allow challenges to foreign aid programs on the ground that the government's subsidy of a particular viewpoint abroad encourages the foreign recipients of American aid not to speak or associate with Americans opposed to that viewpoint, the political branches would find it impossible to conduct foreign policy. A holding in favor of plaintiffs-appellants in this case would open the possibility of at-

tacks by white supremacists on the policy of the United States with respect to ending apartheid, *see* 22 U.S.C. §§ 5001–5117, a policy that involves not merely financial incentives for a particular viewpoint but coercive sanctions, *see, e.g.,* 22 U.S.C. § 5081. Opponents of American foreign policy pertaining to international terrorism could contest restrictions on aid to "entities associated with" the Palestinian Liberation Organization, *see* 22 U.S.C. § 2227. Plaintiffs-appellants have not proposed any means of distinguishing between the Mexico City Statement and these other policies directed at non-citizens that have an incidental impact on the first amendment rights of citizens.

AID's implementation of the executive branch's decision to restrict the class of foreign beneficiaries of American assistance must be upheld if rationally related to the policy goal. *See, e.g., International Union,* 485 U.S. at 365–66, 108 S.Ct. at 1189; *Taxation With Representation,* 461 U.S. at 548, 103 S.Ct. at 2002. The district court found that the Standard Clause is narrowly tailored and does not diverge from what is required by the Mexico City Statement. *Planned Parenthood,* 1990 WL 26306 at *7, 1990 U.S. Dist. LEXIS 2430 at *20. Plaintiffs-appellants contend that AID could authorize the use of segregated accounts to allow foreign NGOs to accept restricted funds from AID while expending their own funds for abortion-related activities. While segregated accounts would be less restrictive than the Standard Clause, such accounts would not advance the policy that the United States will "withhold federal assistance from foreign non-governmental organizations ("NGOs") that perform or actively promote abortions, *even if those activities are financed with non-federal funds." Planned Parenthood I,* 838 F.2d at 651 (emphasis added); *see also* Mexico City Statement at 5. Plaintiffs-appellants do not suggest any manner of limiting AID's implementation that is consistent with the policy enunciated in the Mexico City Statement. The Standard Clause goes no further than necessary to implement an otherwise nonjusticiable decision limiting the class of beneficiaries of foreign aid, and any burden on plaintiffs-

appellants' rights is incidental to that policy decision. We therefore affirm the dismissal of plaintiffs-appellants' first amendment claims.

As to the privacy claim asserted by plaintiff-appellant Doe, the district court repeated the analysis applied to the first amendment claims and found that the Standard Clause erected no affirmative obstacles to Doe's ability to obtain abortion-related advice. *Planned Parenthood,* 1990 WL 26306 at *8–9, 1990 U.S. Dist. LEXIS 2430 at *25–26. Doe contends that this holding is inconsistent with dicta in *Webster v. Reproductive Health Services,* —— U.S. ——, 109 S.Ct. 3040, 3052 n. 8, 106 L.Ed.2d 410 (1989), and *New York v. Sullivan,* 889 F.2d at 413–14. In *Reproductive Health,* the Court upheld prohibitions on, *inter alia,* the use of public facilities for abortions not necessary to save the mother's life and the use of public funds, employees or facilities for the purpose of encouraging or counseling abortion when not necessary to save the mother's life. 109 S.Ct. at 3042–43. But the Court questioned whether a different result would be required "if the State barred doctors who performed abortions in private facilities from the use of public facilities for any purpose." *Id.* at 3052 n. 8; *accord New York v. Sullivan,* 889 F.2d at 413–14. The Court cited *McRae* for this cautionary note, in which it had suggested, also in dicta, that a legitimate refusal to subsidize abortions might be transformed into an unconstitutional penalty "if Congress had attempted to withhold all Medicaid benefits from an otherwise eligible candidate simply because that candidate had exercised her constitutionally protected freedom to terminate her pregnancy by abortion." 448 U.S. at 317 n. 19, 100 S.Ct. at 2688 n. 19.

The district court properly found that the Standard Clause imposes no such "penalty." There is no allegation in the complaint that Doe will lose her ability to go to an AID-funded clinic if she "exercise[s] her constitutionally protected freedom to terminate her pregnancy by abortion" at a facility unrelated to the clinic. *Id.* Nor is there any allegation in the complaint that Doe's physician may not work at an AID-funded clinic if she or he performs or actively

66

promotes abortion at a facility unrelated to the AID-funded clinic. Indeed, the Standard Clause specifically exempts such independent acts from its conditions:

Action by an individual acting in the individual's capacity shall not be attributed to an [NGO] with which the individual is associated, provided that the [NGO] neither endorses nor provides financial support for the action and takes reasonable steps to ensure that the individual does not improperly represent that the individual is acting on behalf of the [NGO].

Standard Clause ¶ (d)(10)(iii)(C). Because the Standard Clause does not implicate the questions left unanswered in *Reproductive Health, McRae,* and *New York v. Sullivan,* we also leave the issue for another day.

Having found no constitutional rights implicated here, we do not address the government's arguments concerning standing. *See Intercommunity Center for Justice and Peace v. INS,* 910 F.2d 42, 46 (2d Cir.1990).

CONCLUSION

The judgment of the district court is affirmed.