Todd YOUNG

v.

CITY OF ROSEVILLE.

No. 99–CV–1515 JMR/FLN.

United States District Court,
D. Minnesota.

Dec. 27, 1999.

Randall DB Tigue, Tigue Law Office, Minneapolis, MN, for Todd Young, plaintiff.

Carla J Heyl, League of MN Cities Ins Trust, St Paul, MN, for Roseville, City of, a municipal corporation, defendant.

## ORDER

ROSENBAUM, District Judge.

This matter was heard on November 19, 1999, on plaintiff's request for a preliminary injunction. The parties agreed there were no unresolved material facts, and that the matter could be considered as a motion for a permanent injunction and was ripe for final determination on the merits.

For the reasons set forth below, plaintiff's motion is granted, based on the Court's judgment that the definitions of defendant's City Code 1009.02 and 1009.03 are null and void for violation of the Constitution of the United States.

### I. *Background*

Plaintiff is an attorney who practices law within the borders of defendant, City of Roseville, Minnesota ("Roseville" or "the City"). Roseville is a first-ring suburb of St. Paul, Minnesota. Outside plaintiff's office stands a flagpole approximately sixty feet tall. Prior to the events underlying this action, the flagpole was primarily a standard for the American flag.

### A. *The First Ensign*

In the summer of 1999, plaintiff lowered Old Glory, replacing it with an ensign commonly known as the "Jolly Roger." The Jolly Roger bears a depiction of a skull and crossbones. Popular legend holds it to have flown over pirate ships. Plaintiff's Jolly Roger was modified, bearing words identifying his law firm and areas of practice, none of which, apparently, includes piracy.

The City responded to this substitution, advising plaintiff that his flag was considered a sign subject to regulation under Roseville's ordinances. As such, according to Roseville, it needed a City permit. In late July, plaintiff applied for a permit.

On August 4, 1999, plaintiff's application was denied by Roseville's code coordinator, the person in charge of issuing sign permits. The coordinator cited several reasons, each premised on the conclusion that the Jolly Roger was not a flag under the ordinance, but was a sign or banner. Under defendant's ordinances, anything deemed a banner can be banned outright; if deemed a sign, it is subject to regulation.

Plaintiff acquiesced in the coordinator's decision, at least insofar as it concerned the text-bearing Jolly Roger. But, as is obvious from the fact that this lawsuit is pending, this does not conclude the story.

### B. *The Second Ensign*

However disappointed, plaintiff was undeterred. In August, 1999, he again sought Roseville's permission to fly the Jolly Roger, this time without advertising text. This effort, too, was unavailing: On September 20, 1999, citing the same reasons, the code coordinator rejected plaintiff's second application. The rejection letter included the caution that an unpermitted device could subject its owner to a misdemeanor charge with attendant dollar or jail penalties.

### C. *The Ordinance*

Roseville's ordinance defines signs, banners, and flags as follows:

A sign is a name, identification, description, display, illustration or device which is affixed to, painted or represented directly or indirectly upon the outside of a building or surface and which directs attention to an object, product, place, activity, person, institution, organization or business. A sign shall be considered as a structure or a part of a structure for the purpose of applying yard and height regulations except as hereinafter stipulated.

Banners ... are attention-getting devices of various shapes, sizes and colors that typically are made of a paper, cloth, or plastic material

[A flag is a] piece of cloth or bunting varying in color and design, used as a symbol, standard, emblem or insignia identifying a governmental agency or any civic, charitable, religious institutional, patriotic, corporate, fraternal or

similar organization, flags [of] foreign nations having diplomatic relations with the United States and any other flag adopted or sanctioned by the legislative body of a governmental jurisdiction.

Roseville City Code 1009.03(B), 1009.03(A)(8), 1009.02.

The definitions of this ordinance lie at the heart of the present dispute. Plaintiff claims the Code's purported distinctions are impermissibly content-based, in violation of the United States Constitution. He further claims the Code fails to provide adequate procedural protections in the event of a permit denial, further violating the Constitution's due process guarantees. Defendant concedes its ordinance has some content-based aspects, but contends this is permissible as a regulation of commercial speech.

## II. *Substantive Challenge*

■ The parties agree that, to at least some extent, Roseville's ordinance is focused on the device's communicative content. As a convenient example, "flags [of] foreign nations having diplomatic relations with the United States" may be displayed without regulation. And flags relating to "any civic, charitable, religious institutional, patriotic, corporate, fraternal or similar organization" are similarly treated. On the other hand, flags of nations with which the United States does not have diplomatic relations are subject to regulation. Therefore, flags of NATO countries are unregulated, while Cuban or Iranian flags are subject to municipal licensure.

Roseville defends this distinction based on the differing legal treatment afforded commercial and noncommercial speech. *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 564, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). While any restrictions on expressive speech are given rigorous scrutiny, governmental restrains on commercial speech are subject to more deferential review. Roseville claims this differing level of review shields its ordinance from plaintiff's claims. It does not. This is, in part,

because Roseville's ordinance fails to distinguish between the two kinds of expression. Additionally, even if the distinction was made successfully, the ordinance still fails to satisfy even the deferential review standard.

■ Courts have recognized that the display of flags can constitute expressive conduct protected under the First Amendment. Recently, the expressive aspects of flags were noted in *Texas v. Johnson,* 491 U.S. 397, 404–406, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (setting forth numerous examples of flag usage deemed expression). Though the message expressed by plaintiff in flying the Jolly Roger may not be as urgent as the examples in *Johnson,* or in the flag-burning engaged in by the defendant there, neither party has argued that the plaintiff's display of the Jolly Roger is beyond the ambit of the Constitution's protection.

At first glance, the City's ordinance seems to classify flags of foreign countries as expressive and noncommercial in nature. But the ordinance immediately conjoins these national flags with other flags "used as a symbol, standard, emblem or insignia identifying a governmental agency or any civic, charitable, religious institutional, patriotic, corporate, fraternal or similar organization." Clearly, many of these are commercial in nature. At argument, Roseville's counsel acknowledged that a flag bearing a corporate symbol, such as the Pillsbury Doughboy—indisputably a commercial symbol—would be considered a flag under the ordinance, and thus, could be flown permit-free. From these facts, the Court must conclude that, at least with respect to flags, Roseville's ordinance draws no distinction between noncommercial/expressive speech and commercial speech.

"Signs" and "banners" are similarly regulated, drawing no clear distinction between commercial and noncommercial speech. Under the Roseville ordinance, "banners" cover commercial speech, such as cloth signs for the nearby Har Mar

mall, fabric devices indicating store grand openings, and bright colored devices flapping in the wind which draw attention to the numerous car dealerships in the area. At argument, counsel for the City alluded to inflated devices such as blow-up gorillas used as advertisements.

But the words of the ordinance draw no distinction between these commercial devices and a citizen's sign advocating against the United States' involvement in Kosovo, or for or against legal abortion, or the display of Castro's Cuban flag, or even a banner protesting the City's zoning ordinances, each of which is clearly expressive and noncommercial in nature. Thus, again, the ordinance includes both commercial and noncommercial speech in its definition of signs and banners.

Accordingly, a facial reading of the Roseville ordinance gives very little support to the City's contention that its ordinance distinguishes between a free and virtually unlimited exercise of expressive speech, and a more rigorous regulation of commercial speech. This may have been the intent of its drafters, but it fails in execution. Notwithstanding this determination, the Court continues its analysis as if the Roseville ordinance had struck a clean distinction between expressive and commercial speech.

■ Here, the Court turns to *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). In that case, Cincinnati's ordinance attempted to draw a cleaner line between commercial and noncommercial speech than is presented here. Cincinnati attempted to draw this line by prohibiting the distribution of commercial handbills on public property. The city enforced its ordinance by removing commercial news racks from public sidewalks, while allowing the distribution of noncommercial handbills. Much like Roseville's ordinance's justification of "aesthetics and traffic safety" (Defendant's Response to Plaintiff's Motion at 7), Cincinnati offered "safety and attractive appearance of its streets and sidewalks" as the basis for its ordinance. The Supreme Court struck down Cincinnati's ordinance. It did so because it found "no relationship whatsoever to the particular interests that the city has asserted" and the ordinance's action barring commercial news racks.

There is a dissonance between the purported basis for Roseville's ordinance and its implementing enactment here as well. Roseville offers the goals of aesthetics and traffic safety. But its ordinance, regulating both commercial and noncommercial expression, bears no clear relationship to those goals. Flags, whether they be of countries with which the United States does or does not have cordial relations, can be equally as aesthetically pleasing. Similarly, mythic corporate symbols, or plaintiff's Jolly Roger device, can please or displease others. Doubtless, some ordinance-defined signs or banners can be tasteful, and others wretchedly distracting. The ordinance simply fails to draw any meaningful distinctions which allow some or prohibit others. As such, it either draws meaningless distinctions, or it vests its enforcer with such broad powers that the ordinance cannot survive constitutional scrutiny, as discussed below.

While Roseville may wish to regulate signs, banners, or flags, generally, it attempts to do so by aiming a blunderbuss at vaguely-defined commercial speech. Roseville may not bear a specific animus toward one device's particular message, but such animus is not required to strike down the ordinance. *See Discovery Network*, 113 S.Ct. at 1516. It is enough that the ordinance restricts expression without a sufficient justification and imprecisely attempts its distinctions. As such, the ordinance does not meet constitutional muster. *See also United States v. Eichman*, 496 U.S. 310, 110 S.Ct. 2404 (1990); *Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533 (1989); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) *Whitton v. City of Gladstone*, 54 F.3d 1400 (8th Cir.1995).

## III. *Procedural Challenge*

Plaintiff further claims the procedural aspects of Roseville's ordinance are unconstitutional. The Court agrees. The problems are two-fold: First, the ordinance vests too much discretion in defendant's code coordinator, who makes the decision to grant or deny a permit; and second, it fails to comply with the Supreme Court's procedural requirements to be used when making determinations involving First Amendment expression. Each is addressed in turn.

### A. *Excess Discretion*

■ The Supreme Court has consistently required definite and objective standards to be set forth and followed when a government official is empowered to limit citizens' ability to express themselves. *See FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Staub v. City of Baxley,* 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); *Schneider v. State,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939). Under these cases, any such standards must be sufficiently clear and objective, thus making the decision—to authorize or ban—ministerial, as opposed to subjective, in flavor.

■ Viewed from this perspective, the Roseville ordinance fails to set forth its standards sufficiently clearly to survive constitutional attack. Although the ordinance related to permanent signs (Sec. 1009.01), when read as a whole, provides *some* guidance as to how to classify various proposed appurtenances, whether they be flags, banners, or signs, its decision making process is far from ministerial. As has been shown above, the distinctions between one kind of display and another is vague and cannot be clearly expressed or defined. Is Korea's flag more or less irritating than Cuba's? Is a sign of one tax-exempt organization more or less infuriat-ing than another? Are all banners offensive? The ordinance's classifications simply cannot be made in anything resembling an automatic fashion. This necessarily vests too much discretion in Roseville's code coordinator who is called upon to make these subjective determinations.

■ Similarly, Roseville's temporary sign permit ordinance (1009.3G1 *et seq.*) is impermissibly vague, opening the door to subjective discretionary determinations prohibited by the Supreme Court. Asking whether a proposed temporary sign "interfere[s] with the use and enjoyment of adjacent land" simply invites subjective decisions based on a proposed sign's content. Such a standard fails constitutional scrutiny.

The Court does not consider whether the Jolly Roger's permit was denied in good or in bad faith. This is because the Constitution requires that the regulating policy be so clear and objective as to make the City's good or bad faith, or that of its employees, irrelevant. *See City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). When seen in this light, the standards in defendant's ordinance, such as they are, are insufficiently clear. Therefore, the permitting process must be stricken as unconstitutional.

### B. *Insufficient Procedural Protections*

The City's ordinance fails for yet a third reason: it does not provide procedural protections which will allow it to meet the Constitution's requirements. The need for these standards is most clearly expressed in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), which mandates four standards to be satisfied when official permission is required to engage in First Amendment expression.

*Freedman* defined these as: First, the permit must be granted or denied within the briefest possible time, and that time must be specified in the ordinance. Second, if such permission is denied, the ordi-

nance must provide a specific, and brief, time period within which a temporary or permanent injunction must be obtained— and that burden shifts to the licensor. Third, any restraint imposed prior to a final judicial determination on the merits must be limited to maintaining the status quo for the shortest possible specified time period. Finally, a prompt final judicial decision must be assured. *See id.* at 59, 85 S.Ct. 734. The Court further refined the *Freedman* test in *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, by identifying two safeguards as "essential," and suggesting that the remaining two are not critical. The required provisions are a specified, reasonable, time period for decision, and access to prompt judicial review. *See id.*

█ Plaintiff suggests that the *FW/PBS* standards are inapplicable, because this case is concerned with the single Jolly Roger, while *FW/PBS* dealt with an entire, broadly defined class of expressive material. The Court declines consideration of these issues, because the Roseville ordinance falls below both either the standards in *FW/PBS* or those established in *Freedman.*

Specifically, Roseville's ordinances fail to provide any time period within which decisions must be made. They also fail to provide any procedure for obtaining prompt judicial review. The code coordinator could have simply buried plaintiff's permit application in a file cabinet and, on its face, have fully complied with the City's ordinance; then, when he did deny the application, the Roseville ordinance offers no mechanism to obtain judicial review. This does not meet the Constitution's requirements.

## IV. *Redrawing the Statute*

At oral argument, counsel for defendant invited the Court to use a "blue pencil" and specify problematic portions of the ordinance, if any portion of the ordinance was found unconstitutional. This request asks the Court to help redraft the ordi-

nance. The Court must decline this invitation.

Article III of the United States Constitution wisely reserves the Court's judicial power to the resolution of a "case or controversy." This prudent restriction lets regulators attempt to draft lawful regulations, and allows judges to evaluate regulation, without themselves having been their author.

## V. *Conclusion*

The Court finds Chapter 1009 of Roseville's ordinances to be unconstitutional. Accordingly, IT IS ORDERED that:

1. Defendant and its agents, officers, employees, and persons acting under its direction and control, are permanently enjoined from enforcing Chapter 1009 of the Roseville City Code against plaintiff or others.

2. Plaintiff's motion for a preliminary injunction is denied as moot.

LET JUDGMENT BE ENTERED ACCORDINGLY.