DISSENTING OPINION

Yeary, J.,
filed a dissenting opinion,
Today, the Court declares Texas’ destruction of a flag statute facially unconstitutional- Six members of this Court’undo the considered work of our State’s House of Representatives, our Senate, and our Governor.[1] Having determined- that the law is drawn in violation of the First Amendment, the Court’s opinion means that this penal law may no longer be enforced against anyone, no matter what the circumstances — ever. . This is a powerful rebuke to the people’s representatives! I do not join it.
To be clear, .1 do not today contest the opinions of the United.. States Supreme Court, which have determined that laws similar to the one at issue here are capable of being applied in a manner that is inconsistent with the guarantees of the First Amendment. See, e.g., Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (finding that the former version of Texas destruction of a flag statute was applied unconstitutionally); United States v. Eichman, 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990) (finding that the Flag Protection Act of 1989 had been applied unconstitutionally). But this Court’s opinion does not limit itself to a conclusion that the statute has been applied unconstitutionally against Appellee. It can’t The statute most certainly was applied constitutionally under the circumstances presented here.[2]
Instead of assessing whether the statute was applied unconstitutionally in this case, the Court avoids that question and finds that the statute facially conflicts with the First Amendment due to its substantial overbreadth. In reaching that conclusion, the Court goes where no United States Supreme Court opinion has gone before it. Twice before, in Texas v. Johnson and again in United States v. Eichman, the United States Supreme Court has found statutes regulating the destruction or desecration of flags to have been unconstitutionally applied. Johnson, 491 U.S. at 404 n.3, 109 S.Ct. 2533 (explaining that the *886 Court intentionally chose to resolve this case only “on the basis of his claim that the. statute as applied to him violates the First Amendment”); Eichman, 496 U.S. at 312, 110 S.Ct. 2404 (concluding that the federal Flag Protection Act “cannot constitutionally be applied to appellees”). But the Supreme Court has never, to my knowledge, found such a statute to.be facially unconstitutional. Instead, it has declined to make that kind of an expansive ruling, even .explaining at one point, “[w]e have not automatically concluded ... that any action taken with respect to our flag is expressive.” Johnson, 491 U.S. at 405, 109 S.Ct. 2533.
I am persuaded that, in reaching the conclusion that the Texas destruction of a flag statute is facially unconstitutional, the Court has made two important mistakes. First, I am persuaded that the Court has made a mistake- in concluding that it (the Texas Court of Criminal Appeals) has both the ' power and the constitutional obligation, mandated by. no less than the First Amendment itself, to decide that the destruction of a flag statute is facially unconstitutional in this case, - even though the defendant cannot show the statute was unconstitutionally applied to him and to his own conduct. Second, I am persuaded that the Court has mistakenly concluded that the statute at issue here is substantially overbroad in relation to its otherwise plainly legitimate sweep, when it is not. For these two reasons, as more fully explained in this opinion, I respectfully dissent.
AUTHORITY TO DECIDE THE CASE
The. majority concludes in this case that Texas courts are bound — by no less than the First Amendment itself — to review Ap-pellee’s claim that the statute is unconstitutional because it violates the First Amendment, regardless of .whether he can show that his own First Amendment rights have been violated. I disagree. I believe Appellee’s complaint that the statute under which he was charged . violates the First Amendment should have been rejected because he cannot show that his own First' Amendment rights have been violated. For reasons grounded in the Texas Constitution and in Texas law, I believe we should find that we and the other courts in our state are -not authorized to address challenges to the constitutionality of statutes — even in cases alleging First Amendment overbreadth — brought by claimants who cannot show that the statute operated unconstitutionally in their own cases.
I must address my thoughts on this matter in two parts. First, I will explain why I believe Texas does indeed have the discretion to apply a stricter standard than the standard employed by the federal courts' when assessing which litigants have standing to bring an overbreadth claim.in our state courts. Second, I will explain why I believe our authority to address overbreadth claims is more limited than the authority of the federal courts.
A. State Discretion to Restrict Standing for OverbreadtK Claims
The United States Supreme Court observed, in Virginia v. Hicks, that “[w]hether Virgina’s courts should have entertained [an] overbreadth challenge is entirely a matter of state law.” 539 U.S. 113, 120, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) (emphasis in original). At the same time, the Court also observed a distinction between: (1) questions about whether the state courts “should have entertained” the challenge brought by Hicks, and (2) questions about “whether the claimed over-breadth [of the] policy [at issue] [was] sufficiently ‘substantial’ to produce facial invalidity.” Id. Speaking of the latter (whether the claimed overbreadth was sufficiently substantial), the Court explained, “These questions involve not standing, but ‘the determination of [a] First Amendment *887 challenge on the merits.’” Id. (quoting from Secretary of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 958-959, 104 S.Ct. 2889, 81 L.Ed.2d 786 (1984)) (emphasis added). Thus, the Supreme Court acknowledged a distinction between the issue of standing in an overbreadth challenge and the merits of a First Amendment overbreadth issue, which requires a determination about whether the overbreadth of a statute is sufficiently substantial to justify declaring the statute facially unconstitutional.
The Supreme Court of Utah appears to agree with the proposition that standing, as opposed to the merits of an overbreadth claim, is a state law matter. In Provo City Corporation v. Willden, that Court observed, “the federal rules on standing ... are not binding on "state courts, and the article III constitutional restrictions and federalists prudential considerations that have guided the evolution of federal court’ standing law are not necessarily relevant to the development of the standing rules that apply in Utah’s state courts.” 768 P.2d 455, 456 (Utah 1989). The authors of Corpus Juris Secundum also seem to agree. Relying on Virginia v, Hicks, that authority has explained, “State courts are not bound by federal rules of justiciability, even when they address issues of federal law.” 21 Corpus Juris Secundum Courts § 217, at p, 215 (2006).[3]
The majority seems to believe that the relaxed standing requirement applied by the federal courts .in First Amendment overbreadth cases is a part of the substan-five guarantee of the First Amendment, which the- states are not free to avoid. Majority Opinion at 865-68.[4] I disagree. Limiting consideration of First Amendment overbreadth claims to those litigants who can demonstrate that their own constitutional rights have.been violated would not mean that this Court would ignore the application of the substantive rule enforced through the First Amendment overbreadth doctrine. The substantive aspect of that doctrine requires invalidation of a law when it is shown that the overbreadth of the law is substantial; in relation to its otherwise. legitimate sweep. See Hicks, 539 U.S, at 120, 123 S.Ct. 2191 (explaining, “whether the claimed overbreadth [of a] policy [at issue] is sufficiently ‘substantial’ to produce facial invalidity,” is the question that guides “the determination of [a] First Amendment challenge on the merits.”). That substantive “merits” element of a First Amendment overbreadth challenge establishes a diminished burden from the burden that is applicable in ordinary constitutionality challenges, which commands that a .statute will- not be declared unconstitutional-unless. it is shown that it is unconstitutional in. all of its applications. See Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (explaining, “the plain import of our cases is, at the very least, that facial overbreadth adjudication's an exception to our traditional rules of practice,” and “the over-breadth of a statute must not only be real, but substantial as well, judged in relation to the statute’s plainly legitimate sweep.”). *888 Compare Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (explaining that, in most cases in which a defendant seeks a declaration that a statute is facially unconstitutional, the Supreme Court requires a demonstration that the statute operates unconstitutionally in all of its applications), with United States, v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (explaining that a “challenger must establish that no set of circumstances exists under which the Act would be valid”).
The majority correctly observes that'the Virginia Supreme Court has addressed and rejected my conclusion that Virginia v. Hicks stands for the proposition that who may bring a facial challenge alleging overbreadth is a matter of state law. Majority Opinion at 867-68; see also Jaynes v. Commonwealth, 276 Va. 443, 666 S.E.2d 303, 308 (2008). In Jaynes, the Virginia Supreme- Court concluded, “the opinion of the United States Supreme Court in [Virginia v. Hicks] addressed the issue of First Amendment standing only in the context by which that issue was placed before the Court: whether a state’s 'expansion of First Amendment standing was subject to review by federal courts.” Jaynes, 666 S.E.2d at 310. Thus, that court concluded, “the seemingly broad language about standing in the [Virginia v. Hicks] opinion cannot have the meaning now espoused by the Commonwealth.” Id,
Ah, but can it? I believe that it can. I believe it does, and I believe the' Supreme Court of Virginia probably reached the wrong conclusion because it made the same mistake this Court makes in failing to perceive a difference between the two aspects of the overbreadth doctrine applied by the United States Supreme Court; both courts (this Court and the Virginia Supreme Court) fail to distinguish between the standing aspect of the Supreme Court’s overbreadth doctrine and the aspect of its doctrine that addresses thé merits of ■ the constitutionality question: whether a statute’s overbréadth is sufficiently substantial to find that it violates the First Amendment.
The majority points to some United States Supreme Court cases that recite, in various ways, a rule that I do not contest. Those cases stand merely for the indisputable proposition that the overbreadth doctrine itself is a function of substantive First Amendment law.[5] Unlike the majority, however, I recognize a difference between the “standing” element employed by the United States Supreme Court, to decide which litigants are permitted to bring a First Amendment overbreadth claim in federal court, and the substantive element of such a claim that requires measuring the substantiality of the statute's over-breadth to determine whether the statute is facially unconstitutional. It is the measurement of the statute’s overbreadth that addresses the merits-based element of an overbreadth claim.
The majority also sets up a false comparison between claims brought by litigants asserting First Amendment over-breadth .and claims brought by litigants asserting Fourth Amendment expectation-of-privacy issues. The majority observes that the latter issues (involving the Fourth Amendment) can also be characterized as involving “standing,” but are more accurately viewed as part of substantive *889 Fourth Amendment law. To support that proposition, the majority quotes from Rakas v. Illinois, 439 U.S. 128, 139-140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), in which the United States Supreme Court' explained that “Fourth Amendment rights are personal in nature” and that the “definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.” But the issue of standing in First Amendment overbreadth cases is distinct from the conclusion that Fourth Amendment rights themselves are only personal rights.
The majority observes that “[n]o one would claim ... that a state court can decline to entertain the Fourth Amendment claim of an overnight guest on the ground that overnight guests simply do not have standing in state court under state law.” Majority Opinion at 868. I agree. But that is because standing in that sense, under the .Fourth Amendment, addresses not whether the claimant has a sufficient personal interest to bring the claim at all, but rather, whether the claimant has a sufficient privacy interest in the place searched to invoke Fourth Amendment protection.
It is also important to recognize that the Supreme Court has not invoked prudential considerations to expand the concept of Fourth Amendment standing as it has in First Amendment overbreadth cases. If it ever did, I might disagree with the majority about Fourth Amendment standing. I believe we might indeed then — properly— question our right to entertain a Fourth Amendment claim brought by one claimant based only on the invasion of another person’s rights, even if the United States Supreme Court sanctioned it.
Rakas is also inapposite to the issue I have addressed. In Rakas, the Supreme Court was faced with a request to expand its traditional rules of standing in Fourth Amendment cases to allow criminal defendants to assert the Fourth Amendment rights of others when seeking to exclude evidence from their trials. 439 U.S. at 129-130, 99 S.Ct., 421. The Supreme Court declined that request. Id. at 150, 99 S.Ct. 421. Here, in contrast, the Supreme Court has already expanded its traditional rules of standing. I question only whether the sources of law that animate or restrain our authority permit us to follow their lead. The Court in Rakas described, “misgivings as to the bénefit of' enlarging, the class of persons who may invoke the [exclusionary' rule]” as a prudential consideration. Rakas, 439 U.S. at 138, 99 S.Ct. 421. To the degree thaf expansion of traditional standing rules involves merely “prudential” considerations, even when the expansion is sanctioned by the United States Supreme Court, the standing rules at issue are no longer rooted in the substantive guarantées of the First Amendment.
I believe that the question of whether the Texas Court of Criminal Appeals must entertain a First Améndment overbreadth claim by a person who cannot demonstrate first that his own constitutional rights have been violated is a matter of state law. I do not believe that the' relaxed standing requirement employed by the United States Supreme Court for overbreadth claims is a substantive guarantee- of the First Amendment. The Supreme'Court of the United States may no more compel this Court to hear such a claim by such a person than it may compel this Court to entertain .discretionary review- in civil cases. Prior to this time, I would have thought that the-latter issue (that Supreme Court could never compel us to hear civil cases because our state constitution forbids it) to -be beyond disphte. Compare Tex. Const. Art. V, § 3 (jurisdiction of the Texas Supreme Court) with Tex. Const. ART. V, § 5(a) (jurisdiction of the Texas Court'of Criminal Appeals).
*890 B. Texas law limits this Court’s authority to address overbreadth claims
Having concluded that the standing element of an overbreadth claim is a matter of state law, I next address whether there are reasons why this Court should refuse to adopt the Supreme Court’s relaxed standing requirements for overbreadth cases.' I conclude we' should not relax the standing requirements in Texas.
The Supreme Court of the United States derives its authority from Article III of the United States Constitution, which limits its jurisdiction to. “cases” and “controversies.” [6] That Court explains that the doctrine of “standing” is a landmark that serves to identify which cases will satisfy the Constitution’s case and controversy requirement. See Lujan v. Defenders of Wildlife 504 U.S., 555, 559-562, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). But “standing,” the Court has explained, has two strands: (1) Article III standing and (2), prudential standing. See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004). Both are founded on concerns “about the proper — and properly limited — role of the courts in a democratic society.” Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).
To establish Article III standing, a claimant in federal court must show an “injury-in-fact” which “helps to ensure .that the plaintiff has a personal stake in the outcome of the controversy.” Susan B, Anthony List v. Driehaus, — U.S.-, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) (internal quotation marks omitted). However, the Supreme Court has also “adverted to a prudential branch of standing, a doctrine not derived from Article III and not exhaustively defined but encompassing ... at least three broad principles: the general prohibition on a litigant’s raising another person’s legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiffs complaint fall within the zone of.interests protected by the law invoked.” Lexmark Int'l, Inc. v. Static Control Convponents, Inc., — U.S.-, 134 S.Ct. 1377, 1386, 188 L.Ed.2d 392 (2014) (internal quotation marks omitted). These “broad principles,” which animate the federal court’s “prudential branch of standing,” appear to me to be related more to the doctrine of separation of powers than to the Article III constitutional limitation of the federal courts’ authority to the determination of cases and controversies. Cf id. (explaining, “From Article Ill’s limitation of the judicial power to resolving Cases and Controversies, and the separation-of-powers principles underlying that limitation, we have deduced a set of requirements that together make up the irreducible constitutional minimum of standing.”) (internal quotation marks omitted).
The United States Constitution does not expressly require that the powers of the three branches of the federal government be separated. It is the United States Supreme Court that has judicially enforced the federal doctrine of the separation of powers. See Miller v. French, 530 U.S. 327, 341, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining, “[t]he Constitution enumerates and separates the powers of the three branches of Government in Articles I, II, and III, and it is this very' structure of the Constitution that exemplifies the concept of separation of powers.”) (internal quotation marks omitted). The Texas Constitution, in clear contrast, mandates in plain language — appearing in the Constitution itself — that the “powers of'the Government ... shall be divided.”[7] The fact *891 that separation of powers in Texas is not just a judicially observed phenomenon, but a distinct, overt, and clearly stated constitutional mandate indicates to me that our courts might have less discretion in defining the parameters of that doctrine for our State than does the United States Supreme Court when it comes to its federal judicially made separation of powers doctrine.
In fact, the author of today’s > majority opinion once wrote, “this Court has enforced the doctrine of separation of powers more aggressively than the United States Supreme Court has.” State v. Rhine, 297 S.W.3d 301, 317 (Tex. Crim. App. 2009) (Keller, P.J., concurring, in which Meyers, Hervey, and Holcomb, JJ., joined). Perhaps that is because our Texas constitutional mandate that the powers of government remain separated is less subject to our'own indépendent interpretation than is the federal — court made — doctrine 'of separation of powers. We should consider more seriously, .then, whether the Texas Constitution’s prohibition on actions by the Judiciary that invade the province -of the Legislature might impede our authority to execute the United States Supreme Court’s overbreadth doctrine in the exact same manner.as it is executed by that Court. And, consequently, I believe we should consider whether we may permit Appellee in this case to claim — in state court — that the statute under which he was convicted is unconstitutional in the absence of a showing that his own constitutional rights have been violated.
Up to this point in time, this Court has simply assumed, that it has the same authority as the United States Supreme Court to disregard traditional notions of standing (or to alter them) to address facial-overbreadth constitutional challenges in the area of the First Amendment, regardless of a showing by the complaining party that his own constitutional rights have been violated. But we might not have the authority to do that, and we ought not simply to presume that we do without at least considering the. matter with some skepticism. It is simply not enough to conclude that, because United States Supreme Court has that power, we must have it as well. It would.also be a mistake to conclude that the United States Supreme Court has the power to confer or even mandate jurisdiction.or power to act upon this Court where the Texas Constitution and the Texas Legislature have not done so first. The Court of Criminal Appeals is not -merely a subsidiary of* the United States Supreme Court,‘‘or just a lesser federal court, even when it comes to questions of federal constitutional law.
For a court to.judge a law, to be. substantially overbroad -in violation of the First Amendment, prohibiting its future ehforce-' ment certainly frees the public from concern that, it might be enforced against them should they choose to communicate in a manner appearing to conflict with the terms of the law. It is also beyond dispute that the First Amendment .needs “breathing space,” and a statute that is unconstitutionally overbroad in violation of the First Amendment may have the effect of chilling some protected expression until it is declared unconstitutional. But when- a court judges a statute’s potential unconstitutional breadth without the benefit of a case in which its unconstitutional breadth *892 has actually become known by application, the court risks entering into the realm of speculation and conjecture; its speculations and'conjectures about the manners in which the law might be enforced may fail to accord appropriate latitude to the other two branches of government charged with upholding the constitution. To do so may also improperly invade the provinces that are proper only to the other branches of government.[8]
The majority’s decision in this case, to me, bears a striking resemblance to legislative action. Here, an individual who was not unconstitutionally affected by the destruction of a flag law at issue has, in effect, asked this Court to repeal the statute under which he was properly and constitutionally charged and convicted, not because his own constitutional rights were violated, but because the statute might be unconstitutionally applied against others, in the future, who are not before the Court today. This Court has obliged his request,[9] In doing so, we have arguably engaged in a function that should be reserved to the legislative" branch of our State’s government. Certainly, we would not have obliged his request, and neither would the United States Supreme Court, if he had challenged the statute under any theory other than that it violated the First Amendment.
Consistent with the requirement-that a claimant demonstrate standing before being allowed to advance a claim,- the Supreme Court ordinarily requires adherence to the rule that, “a person to whom a statute may constitutionally be applied will not be heard to challenge [the] statute on the ground that it may conceivably be applied unconstitutionally to others, in other. situations not before the Court.” Broadrick v. Oklahoma, 413 U.S. at 610, 93 S.Ct. 2908. That.Court has apparently relied on “prudential” considerations to re *893 lax this ordinary rule of- standing in cases alleging First Amendment overbreadth. However, I do not believe that we in Texas are free to interpret our constitutionally mandated separation of powers provision as liberally as the United States Supreme Court has interpreted its own court-made federal doctrine of separation of powers, pursuant to merely “prudential” considerations. Consequently, in this ease, because Appellee cannot show that, his own First Amendment rights have been violated, I would conclude Appellee’s claim— that the Texas destruction-of-a-flag statute is facially unconstitutional — is barred. Cf. Hollingsworth v. Perry, — U.S.-, 133 S.Ct. 2652, 2659, 186 L.Ed.2d 768 (2013) (explaining that when a claimant in federal court cannot establish standing to bring a claim, the federal courts “have no authority to decide [a] case”).
THE COURT MISAPPLIES OVERBREADTH
Even assuming that we are authorized to address the facial constitutionality of the destruction of a flag statute in spite of Appellee’s failure to demonstrate that the statute is unconstitutional as applied to his own conduct, I still have serious concerns that Appellee has failed to meet the bare requirements of the overbreadth doctrine, even as that doctrine has been applied by the United States Supreme Court. In Broadrick, the'United States Supreme Court explained, “where 'conduct and not merely speech is involved, .:. thé' over-breadth of a statute must not only bé real, but substantial as well, judged in relation to the statute’s plainly legitimate sweep.” Broadrick, at 6Í5, 93 S.Ct. 2908. There is no question that the destruction of a flag statute addresses conduct. The majority even acknowledges that “the conduct of intentionally or knowingly damaging a United States flag is not inherently expressive.” Majority Opinion at 873 & n.74; see also Johnson, 491 U.S. at 403 n.3, 109 S.Ct. 2533. As a matter of fact, the only way that the destruction of a flag statute can ever be applied to expressive conduct is if an'actor violates the statute with the additional self-initiated intent (not described in the statute) to express some message. But the statute itself makes no reference to this additional self-initiated intent.
In isolation, then, the destruction of a flag statute is a pure conduct regulation. In that regard, it is really no different than our laws prohibiting disorderly conduct. See Tex. Pen, Code § 42.01 (providing that a person commits an offense if, among other things, the person intentionally or knowingly “(3) creates, by chemical means, a noxious and unreasonable odor in a public place;” or “(5) makes an unreasonable noise in a public place ... or in or near a private residence that he has no right to occupy”). Like the destruction of a flag statute, the disorderly conduct statute prohibits pure conduct. It is only when a discrete individual violates these laws with the additional self-initiated intent to communicate a message that any potential violation of the First Amendment — even arguably — might occur.[10]
In many respects, the law at issue here is also comparable to the law at issue in Virginia v. Hicks. The Supreme Court explained that Hicks “was not arrested for leafleting or demonstrating without permission,” but rather, “[h]e violated [a] written rule that persons who receive a *894 barment notice must not return to the [Richmond Redevelopment and Housing Authority] property.” Hicks, 539 U.S. at 121, 123 S.Ct. 2191. The Court explained, “there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law — particularly a law that reflects ‘legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.’ [citation omitted]. For there are substantial social costs created by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct.” Id. at 119, 123 S.Ct. 2191 (first emphasis in the original; second emphasis added).
It seems to me that a determination that a statute is unconstitutional’ on its face should not be entirely dependent on the motivations of individual violators who attack it. At that point, we are no longer truly addressing the facial constitutionality of the law itself, but the mere constitutionality of the application of the law against the individuals who violate it with an additional self-initiated intent to communicate a message.
The outer boundaries and reach of the overbreadth doctriné have not yet been defined by the United States Supreme Court. We know that before a court may strike down a law “where conduct and not merely speech is involved, ... the over-breadth of a statute must not only be real, but substantial as well, judged in relation to the.statute’s plainly legitimate sweep.” Broadrick, at 615, 93 S.Ct. 2908. But what constitutes “substantial ... in relation to ... [its] plainly legitimate sweep”? An easy argument can be made that it means the statute prohibits a lot óf protected speech! But the majority observes in this case only that it is “clear that the Texas flag destruction statute violates the First Amendment when applied to some circumstances.” Majority Opinion at 873 (emphasis added). The majority also concedes that there are at least two types of situations that might involve permissible applications of the law. Majority Opinion at 875. The majority then concludes that “[m]ost conduct that falls within the provisions of the statute and that would come to the attention of the authorities would constitute protected expression.” Majority Opinion at 876. But that conclusion- can only be drawn with reference to choices made outside of the parameters' of the language of the statute itself — and with a reference to choices made by actors who use the violation of this pure conduct-regulating statute to accomplish their own purposes.
What is certain is that the overbreadth doctrine, as it is currently enforced by the Supreme Court, requires an examination of the statute itself, and not merely the potential or hypothetical First Amendment uses that violators of the statute might intend for it by their, acts taken in violation of its provisions. See United States v. Stevens, 559 U.S. 460, 485, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) (Alito, J., dissenting) (citing Hicks, 539 U.S. at 122, 123 S.Ct. 2191) (“[W]e have repeatedly emphasized that an overbreadth claimant bears the burden of demonstrating from the text of [the law] and from actual fact, that substantial overbreadth exists.”) (internal quotation marks omitted). The Supreme Court explains the doctrine this way: “the overbreadth of a statute must not only be real, but substantial[]” Broadrick, at 615, 93 S.Ct. 2908 (emphasis added). Even the Supreme Court acknowledges that “there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law.” Hicks, 539 U.S. at 119, 123 S.Ct. 2191, That point might be where the language of the statute on its *895 face fails to implicate any kind of communicative efforts, and where the only way the statute might prohibit First Amendment protected messages is if the conduct is intended for that purpose solely by the actor. See Broadrick, 413 U.S. at 615, 93 S.Ct. 2908 (explaining, “facial overbreadth adjudication ... attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from ‘pure speech’ toward conduct”).
This Court has not been asked to consider here, and it does not address, whether the flag destruction statute might be unconstitutionally vague or whether it might operate unconstitutionally for any other reason, such as in violation of a right to liberty generally. The Court’s limitation of its- opinion to the issue actually presented is, I believe, appropriate. Such questions should be reserved for cases in which those issues are clearly before us.
CONCLUSION
Appellee in this case has failed to demonstrate that his own conduct — that violated the provisions of the destruction of a flag statute — was protected by the First Amendment. In cases where the destruction of a flag statute operates unconstitutionally in violation of an individual’s First Amendment rights as applied, I would agree that such an individual would deserve relief.[11] Under the circumstances presented here, I cannot agree.

. The majority suggests that whether the statute was applied constitutionally in this case is not self-evident. -Majority Opinion at 863 n,5. But the court of appeals resolved this question. State v. Johnson, 425 S.W.3d 542, 549 (Tex.App. — Tyler 2014) (explaining, "we conclude that Appellee’s conduct was not 'sufficiently imbued with elements of communication’ to implicate the First and Fourteenth Amendments,” and "[t]he record before us shows that Appellee engaged in an act of criminal mischief with no intent to convey any particularized message.”). As the majority correctly notes, Appellee did not challenge that determination. Consequently, this Court should regard the court of appeals resolution of that issue as conclusive.

. See also Adam M. Samaha, Litigant Sensitivity in First Amendment Law, 98 Nw. U.L.Rev. 1291, 1292 (Summer 2004) ("State and federal courts must abide by the same First Amendment law, but they need not use the same rules for standing. Different judiciaries might now provide overbreadth challenges to different categories of litigants.”).

. The majority argues; "Judge Yeary’s dissent suggests that, as a matter of state law, we might be free to refuse to entertain over-breadth claims." Majority Opinion at 865. But the majority is mistaken. I. do not believe we are free to refuse to entertain overbreadth claims generally. I do believe we ought to refuse to address them when they are presented by individuals who have suffered no constitutional deprivation.

. The majority cites and relies on cases that support this general proposition, such as: Sabri v. United States, 541 U.S. 600, 610, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004), Secretary of Maryland v. Joseph H. Munson Co., 467 U.S. 947, 958-959, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), and New York v. Ferber, 458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Majority Opinion at 865-66 & n.27.

. U.S. Const. Art.- Ill § 2 .(extending "judicial power” to "cases” and “controversies”).

. Tex Const. Art. II, § 1 (providing the following: "The powers of the Government of the *891 State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, .and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in thé instances herein’expressly permitted.”) ' -

. To be sure, there have been times in history when the courts have been more quick than other branches of government to address unconstitutional laws that were popular, such as when the courts addressed the Jim Crow laws. But in a rush to declare statutes facially unconstitutional to protect the public from what we judges consider to be overbroad laws, we might also on occasion forget that we live in a somewhat cloistered world. We basically talk to ourselves, and our staff, and perhaps we read a book from time to time. The other two branches of government have far greater input on matters that directly affect the public than we do. The executive and legislative branches of government natu- ' rally have opportunities to áccess and interact both with those" officials who apply our _ ■ laws and, with the citizens who are most directly affected by them. We in the judiciary Have nowhere near the same level of contact with the thoughts and opinions of real people. This cloistering that affects the judiciary unlike the other branches of government puts us at a disadvantage when -measuring the . true breadth of any law passed by the Legislature and-approved by .the Governor. It also raises the specter that the court might, being called upon to speculate about the possible applications of a law, declare a statute unconstitutionally overbroad — a statute that would never have been enforced in a manner inconsistent with the First Amendment and would never have been understood by ordinary citizens to reach. constitutionally protected expression — by imagining a perfectly fine law into a dangerous monster that threatens the very fabric of our nation. We should guard ourselves against that.

, Allowing a litigant to bring a claim in our state courts that a statute is unconstitutional when he cannot show that it was unconstitutionally applied to him in his own case also invites us to assume the power to issue advisory opinions. But we are without power to do that. See Pfeiffer v. State, 363 S.W.3d 594, 600 (Tex. Crim. App. 2012) (observing that this Court is "without authority” to render advisory opinions). In fact, as this Court has held before, "[i]t is well-established that this Court is without constitutional or statutory authority to ... render advisory opinions, except” for when we are answering questions certified to us by a federal court. Ex parte Ruiz, 750 S.W.2d 217,-218 (Tex. Crim. App. 1988).

. The Texas Penal Code contains a defense to prosecution for cases in which a defendant engages in conduct that would violate Section 42.01(a)(5) whenever that conduct “consists of speech or other communication/’ unless the defendant has disobeyed a reasonable order "to move, disperse, or otherwise remedy the violation prior to his arrest[.]” Tex. Penal Code § 42.04(a), (c).

. It seems to me that the chances that law enforcement officials would attempt to apply this statute against an individual in violation of the First Amendment as construed By the United States Supreme Court have been substantially diminished as a result of that Court’s opinions in Texas v. Johnson and United States v. Eichman. The constitutional ‘right to burn and/or otherwise destroy the flag of the United States is now well and broadly known to the people of this country and beyond.. I would be surprised if even people commonly interviewed by Jesse Wat-ters (host of Watters’ World on the t’elevisibn show The O’Reilly Factor) would not know that the Supreme Court has protected their , right to, express dissatisfaction by destroying the flag. In fact — perhaps because of those opinions — flag burning and flag destruction appear ⅛ have become somewhat of a rite of passage and even a badge of honor for domestic protesters of federal legislative and executive actions. It is incredibly common today to hear stories of people dishonoring this revered symbol of our nation. What has become much less common and almost nonexistent since the United States Supreme Court opinions in Johnson and, Eichman is stories of people being arrested and prosecuted for destroying a flag in the exercise of their First Amendment right of free speech. Consequently, the urgency of striking down this law, even if its language does allow for the potential to reach some constitutionally protected speech, is diminished as well.