COLIN S. BRUCE, U.S. DISTRICT JUDGE
This case is before the court for a ruling on Defendants' Motion to Dismiss (# 25). Defendant's motion was filed on March 27, 2017. Plaintiff filed a response on April 10, 2017. The court has thoroughly reviewed the arguments presented by both sides. For the following reasons, Defendant's Motion to Dismiss (# 25) is GRANTED in part and DENIED in part.
BACKGROUND[1]
Plaintiff filed the instant lawsuit on January 11, 2017, alleging that Kenneth D. Sprague, Jeremy A. Hale, Matthew E. McElhoe, and Andrew J. Charles ("Defendants") violated his rights under the United States Constitution and the Illinois Constitution. According to the complaint, all Defendants are law enforcement officers employed by the Urbana Police Department.
Plaintiff alleges that around June 15, 2016, he conceived an idea to express his dissatisfaction with political and social events by burning an American flag. In order to prepare for his planned demonstration, Plaintiff purchased an American flag and waited for a rainy day to ensure that nothing but the flag would catch fire. The rain came on July 3, 2016. On that date, Plaintiff received permission from a friend to use the backyard of his home, near Lincoln Avenue and California Street in Urbana, Illinois, to burn his American flag. Plaintiff chose this location because he thought it would be a private area, fairly hidden from public view.
Around 8:00 p.m. on July 3, 2016, Plaintiff and a friend went to the backyard near Lincoln and California streets. Approximately twenty minutes later, while holding the flag by a pole, Plaintiff applied a small *918 amount of lighter fluid to the bottom of the flag and lit it with a match. As the flame caught the bottom of the flag and started to burn, Plaintiff's friend used Plaintiff's cellular telephone to take pictures of Plaintiff holding the burning flag.
After the flag was completely consumed by the flames, the fire extinguished itself. The fire only burned the flag and touched nothing else in the yard. Plaintiff and his friend confirmed that the fire was completely extinguished before leaving the yard. Plaintiff does not believe anyone besides his friend saw him burn the flag. The police did not receive any calls or complaints form anyone who had directly viewed Plaintiff burning the flag.
Soon after burning the flag, Plaintiff posted six photographs of himself holding the burning flag to his Facebook page. Along with the photographs, Plaintiff posted the following caption:
I am not proud to be an American. In this moment, being proud of my country is to ignore the atrocities committed against people of color, people living in poverty, people who identify as women, and against my own queer community on a daily basis. I would like to one day feel a sense of pride toward my nationality again. But too little progress has been made. Too many people still suffer at the hands of politicians influenced by special interests. Too many people are still being killed and brutalized by a police force plagued with authority complexes and racism. Too many people are allowed to be slaughtered for the sake of gun manufacturer profits. Too many Americans hold hate in their hearts in the name of their religion, and for fear of others. And that's only to speak of domestic issues. I do not have pride in my country. I am overwhelmingly ashamed, and I will demonstrate my feelings accordingly. #ArrestMe."
After posting the photos and caption, Plaintiff received comments from others throughout the night. Plaintiff responded to some of the comments and, at times, reminded those commenting to be respectful when reacting to his post. Plaintiff claims that his protest and subsequent Facebook post were meant to express his personal views about events in America. Plaintiff had no intention of inciting violence with his post. After responding to several comments, Plaintiff went to bed around 11:00 p.m. on July 3, 2016.
When Plaintiff awoke around 5:00 a.m. on the morning of July 4, 2016, he had received approximately 200 comments in response to his flag-burning post. Around 6:30 a.m., Plaintiff reported to work at Walmart on South Dunlap Street in Savoy, Illinois. At the staff meeting that morning, Plaintiff's supervisor, Chris Hundley, announced that any Walmart employee contacted by the media was to transfer the call to Walmart's corporate headquarters. Around the time of the meeting, Hundley called METCAD, the public communications center for Champaign County, Illinois, regarding alleged threats made by unknown people towards Plaintiff and the Savoy Walmart.
Plaintiff alleges that, at approximately 7:00 a.m. on July 4, 2016, Defendant Hale looked at the Illinois General Assembly website and determine that the Illinois flag desecration statute was still in effect. Hale decided to enforce the statute. Defendant Charles was made aware of Hale's conclusion and approved the decision to enforce the flag desecration statute. At 7:48 a.m., Defendant's Sprague, Hale, and McElhoe were dispatched through METCAD to investigate a complaint that someone had burned a flag and was receiving death threats.
While the officers were en route to Plaintiff's home, Sprague learned that *919 Hundley had called METCAD asking for an officer to call him back. Sprague called Hundley and, after speaking with him, asked to speak with Plaintiff. Plaintiff told Sprague that he had posted the pictures of himself burning a flag on Facebook because he wanted to engage in a peaceful protest over the serious issues of police brutality, welfare, and income inequality. Plaintiff emphasized that he had no intention of upsetting people. Sprague asked Plaintiff where the flag burning had occurred, and Plaintiff informed him of the location. While Sprague spoke with Plaintiff, McElhoe drove to the location.
Sprague told Plaintiff to take down his Facebook post to protect his own and his coworkers' welfare. Plaintiff responded that, if the post had already been shared as widely as the officers had stated, removing his original post would not stop people from continuing to view and share the post. Sprague then discontinued the call.
Upon arriving at the backyard at Lincoln and California Streets, Sprague, Hale, and McElhoe found a pile of burnt ashes and a metal pole. Sprague took possession of the pole. Thereafter, the officers went to the Savoy Walmart to speak with Plaintiff in person.
Between 8:30 a.m. and 9:00 a.m., Sprague, Hale, and McElhoe arrived at the Savoy Walmart. Once there, Hundley escorted the officers to a back office and asked Plaintiff to speak with them. Plaintiff agreed to do so. Plaintiff told the officers that he burned the flag and placed photos of himself burning it on Facebook to protest the blind nationalistic approach to foreign and domestic issues. Sprague asked Plaintiff a series of questions about whether anyone had viewed or could have viewed him burning the flag. Plaintiff responded that it could have been possible to view the burning from Lincoln Avenue through a narrow three-foot passage between homes.
Sprague then placed Plaintiff under arrest and orally informed him of his rights under Miranda v. Arizona. Plaintiff was handcuffed by Sprague, who then searched Plaintiff and charged him with violating Illinois' flag desecration statute. The police report also mentions disorderly conduct as an offense, but the report is not clear about whether Plaintiff was actually charged with this offense.
Sprague, Hale, and McElhoe walked Plaintiff out of Walmart in handcuffs. At least four coworkers and ten customers witnessed their departure. Sprague then transported Plaintiff to the Champaign County Jail and left in him the custody of the corrections officers. Plaintiff was held with at least ten other detainees for approximately five hours. Plaintiff had never been arrested before and felt frightened, lost, shocked, and anxious.
Around 11:00 a.m. Charles notified Lieutenant Joel Sanders of Plaintiff's arrest. Sanders discussed the incident with the State's Attorney's Office. The State's Attorney's Office completed research regarding the constitutionality of the statute around 2:00 p.m. Thereafter, Sanders asked Charles and Sprague to release Plaintiff on a Notice to Appear. Around 2:09 p.m., Charles and Sprague went to the Champaign County Jail and issued Plaintiff a Notice to Appear. Plaintiff was released.
On July 5, 2016, Champaign County State's Attorney Julia Rietz announced that Plaintiff would not be charged under the Illinois flag desecration statute, noting that the Supreme Court of the United States has held that flag burning is protected free speech. Between July 4 and July 8, Sanders also concluded that Plaintiff's conduct did not meet the elements of *920 assault, disorderly conduct, mob action, inciting a riot, or harassment through electronic means.
Plaintiff filed the instant lawsuit on January 1, 2017. In his complaint, Plaintiff alleged that Defendants violated his First and Fourth Amendment rights under the United States Constitution, as well as his rights under Article 1 Sections 4 and 6 of the Illinois Constitution. On March 27, 2017, Defendants filed a Motion to Dismiss (# 25). Plaintiff's response to the motion was filed on April 10, 2017. Defendants' motion is fully briefed and ready to be ruled on.
ANALYSIS
I. Motion to Dismiss Standard
A motion to dismiss serves to test the sufficiency of the complaint, not to decide the merits of the case. See AnchorBank, FSB v. Hofer , 649 F.3d 610, 614 (7th Cir. 2011). Therefore, when ruling on a motion to dismiss, a court must accept, as true, all factual allegations contained within the complaint. See Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, the complaint need only contain sufficient factual allegations to " 'state a claim to relief that is plausible on its face.' " Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). To meet this standard, the allegations in the complaint must: (1) be detailed enough to "give the defendant 'fair notice of what the claim is and the grounds upon which it rests[;]' " and (2) "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.' " E.E.O.C. v. Concentra Health Servs., Inc. , 496 F.3d 773, 776 (7th Cir. 2007) (quoting Twombly , 550 U.S. at 554, 555, 127 S.Ct. 1955 ) (alteration omitted).
II. Defendants' Motion to Dismiss
Defendants argue that Plaintiff's complaint should be dismissed because: (1) Defendants are entitled to qualified immunity on Plaintiff's claims brought under the United States Constitution; (2) Defendants are entitled to immunity pursuant to the Illinois State Tort Immunity Act for Plaintiff's claims brought under the Illinois Constitution; and (3) Plaintiff has no private cause of action under Article 1, Sections 4 and 6 of the Illinois Constitution.
A. United States Constitutional Claims (Counts 1-2)
Defendants argue that they are entitled to qualified immunity on Plaintiff's claims brought under the United States Constitution. In order to defeat a defense of qualified immunity, Plaintiff must demonstrate that: (1) Defendants conduct violated his constitutional rights; and (2) the violated rights were clearly established at the time of the alleged misconduct. Lewis v. Downey , 581 F.3d 467, 478 (7th Cir. 2009). A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson , 483 U.S. at 640, 107 S.Ct. 3034. The Supreme Court has held that a right is clearly established if, in the light of pre-existing law, the unlawfulness of a defendant's action is apparent. Id.
In their motion to dismiss, Defendants concede that, while viewing the facts in a light most favorable to Plaintiff, the court should find that Plaintiff has sufficiently pled a First Amendment violation (count one) which subsequently gave rise to a Fourth Amendment violation (count two). This court agrees. Therefore, the court's focus will be on the objective legal reasonableness of Defendants' actions, assessed in light of the legal rules that were clearly established at the time the actions were taken. See *921 Anderson v. Creighton , 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
Based on the allegations in the complaint, the right at issue in this case is an individual's right to engage in expressive speech by burning an American flag. Defendants argue that this right was not clearly established when Plaintiff was arrested on July 4, 2016. This court disagrees.
The Supreme Court has a long history of protecting expressive conduct involving the American flag on First Amendment grounds. This history is well documented and includes protections for individuals who burn the American flag. Indeed, a full and proper review of the case law regarding expressive conduct and the American flag would require numerous pages. For simplicity sake, the court will provide only a brief overview.
In Spence v. Washington , 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974), the Supreme Court overturned the conviction of a defendant who displayed an American flag with a peace sign taped to it. Fifteen years later, in Texas v. Johnson , 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), the Court invalidated a Texas flag desecration statute as unconstitutionally applied to the defendant who had burned an American flag while participating in a protest. In doing so, the court noted that its prior decisions, including Spence , had recognized "the communicative nature of conduct relating to flags." Id. at 404, 109 S.Ct. 2533. The Court went on to conclude that "[a] law directed at the communicative nature of conduct must, like a law directed at speech itself, be justified by the substantial showing of need that the First Amendment requires." Id. at 406, 109 S.Ct. 2533. One year after Johnson , the court invalidated the federal Flag Protection Act as it applied to individuals who were prosecuted for setting fire to American flags on the steps of the United States Capitol. United States v. Eichman , 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990). The Court noted that "[p]unishing desecration of the flag dilutes the very freedom that makes this emblem so revered, and worth revering."
The cases cited above established a clear precedent that the First Amendment prohibits the arrest and prosecution of an individual for, without more, burning the American flag to express an opinion. See Snider v. City of Cape Girardeau , 752 F.3d 1149, 1156 (8th Cir. 2014). This right had been clearly established since, at the latest, 1990. To put it in the context of this case, the right was clearly established for at least twenty-six (26) years before Defendants arrested Plaintiff on July 4, 2016. For this reason, the court has no trouble finding that a reasonably competent official would have known Plaintiff's expressive conduct was constitutionally protected. Therefore, Defendants are not entitled to qualified immunity.[2]
B. Illinois Constitutional Claims (Counts 3-4)
Plaintiff's third and fourth claims allege violations of the Illinois Constitution. In his request for relief, Plaintiff *922 seeks damages as well as a declaration that Defendants violated his rights under the Illinois Constitution. Defendants argue that they are entitled to immunity on the claims brought under the Illinois Constitution. Plaintiff's response does not address the issue of immunity.
The Illinois Tort Immunity Act (Act) shields public employees from liability for actions committed "in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. Illinois courts have held that a police officer is not guilty of willful or wanton conduct unless he or she acted with actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others. See Chelios v. Heavener , 520 F.3d 678, 693 (7th Cir. 2008) citing Breck v. Cortez , 141 Ill.App.3d 351, 95 Ill.Dec. 615, 490 N.E.2d 88, 94 (1986). The immunity provided by the Act extends to officers whose actions violate constitutional rights. Section 2-203 states:
If a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for any injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable.
745 ILCS 10/2-203.
Here, Plaintiff has alleged that Defendants violated his rights under Article I, Sections 4 and 6 of the Illinois Constitution when they subjected him to an unreasonable seizure following his engagement in protected speech. While the allegations of a constitutional violation are clearly present, Plaintiff's complaint does not contain any contention that Defendants' conduct was willful or wanton. In fact, the complaint alleges that Plaintiff was arrested after Defendants concluded that the Illinois flag desecration statute was still in effect. Thus, Plaintiff is alleging that Defendants acted pursuant to a misunderstanding of the law, not with an actual or deliberate intention to harm him. Without any allegations that Defendants' conduct was willful or wanton, this court must conclude that Defendants are entitled to immunity under the Act and, therefore, cannot be held liable for the tortious conduct alleged in counts three and four. See 745 ILCS 10/2-202, 2-203.
However, despite this conclusion, Plaintiff claims that he can proceed on counts three and four as they pertain to his request for a declaratory judgment. Although Defendants' motion did not specifically address this contention, it did address an issue important for this court's determination. Defendants argued that Plaintiff lacks a private right of action under Article I, Sections 4 and 6 of the Illinois Constitution. Plaintiff did not attempt to counter this assertion, in fact, his response admits that the cases cited by Defendants appear to foreclose a claim for damages under the state constitution. Thus, it appears both sides agree that Plaintiff does not have a private right of action under either Section 4 or Section 6 of Article I of the Illinois Constitution. This court agrees. See Wagner v. Evans , 2016 WL 397444, *5 (N.D. Ill. Feb. 2, 2016).
Federal courts are permitted to issue declaratory judgments only in cases of "actual controversy." 28 U.S.C. § 2201. This requirement is a jurisdictional prerequisite of constitutional dimension. International Harvester Co. v. Deere & Co. , 623 F.3d 1207, 1210 (7th Cir. 1980). A justiciable actual controversy exists only when a private right of action is available. See Schilling v. Rogers , 363 U.S. 666, 677, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960) ("the Declaratory Judgments Act is not an independent *923 source of federal jurisdiction, the availability of such relief presupposes the existence of a judicially remedial right"); Bartucci v. Wells Fargo Bank N.A. , 2015 WL 6955482 (N.D. Ill. Nov. 10, 2015). Here, because there appears to be no private right of action available to Plaintiff under Section 4 or 6 of Article I of the Illinois Constitution, Plaintiff cannot seek a declaratory judgment.[3]
For all of the reasons contained herein, the court agrees with Defendants that counts three and four should be dismissed. Therefore, Defendants' motion is granted as it relates to those counts.
IT IS THEREFORE ORDERED THAT:
(1) Defendants' Motion to Dismiss (# 25) is GRANTED in part and DENIED in part. Plaintiff can proceed on Counts 1 and 2 contained in his complaint. Counts 3 and 4 are hereby dismissed.
(2) This case is referred to Magistrate Judge Eric I. Long for further proceedings.

The factual allegations contained herein come from Plaintiff's complaint. At this stage of the litigation this court must take the facts alleged in the complaint as true. See Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Defendants' have relied on Doe v. Heck , 327 F.3d 492 (7th Cir. 2003), to support their claim that the right in this case was not clearly established. In Doe , the Seventh Circuit concluded that a right was not clearly established despite the fact that it was constitutionally protected because the statute at issue had not previously been challenged and there were no reported decisions, either state or federal, which addressed the precise constitutional issues related to the statute. Doe , 327 F.3d at 516. This court finds Defendant's reliance on Doe to be misplaced due to the numerous and very public cases finding that the First Amendment protects expressive conduct, including burning the American flag.

Of the cases cited by Defendant, only one case addresses this exact issue. However, in Wagner , 2016 WL 397444, the district court concluded, in an unpublished order, that the plaintiff could seek declaratory relief for its claims under Sections 4 and 6 without any analysis and with reliance on cases where the precise issue raised here was not addressed by the court. See Peterson v. Village of Downers Grove , 103 F.Supp.3d 918, 920-21 (N.D. Ill. 2015) ; Kole v. Village of Norridge , 941 F.Supp.2d 933, 959 (N.D. Ill. 2013). Therefore, the court does not find the Wagner decision convincing.